UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PINNACLE GREAT PLAINS OPERATING COMPANY, LLC, | Case No. 4:13-cv-00106-EJL-CWD |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| WYNN DEWSNUP REVOCABLE TRUST, WYNN DEWSNUP, and DOES INDIVIDUAL/ENTITIES I through XX, | |
| Defendants. | |

Before the Court is the motion of Defendants Wynn Dewsnup, individually and as trustee of the Wynn Dewsnup Revocable Trust (collectively "Dewsnup"), to dismiss Plaintiff Pinnacle Great Plains Operating Company, LLC's Complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 3). This case arose from Dewsnup's sale to Pinnacle of some 5,487 acres of land in Cassia County, Idaho. The property includes approximately 4,100 irrigated acres, and the parties' dispute centers on the quality of the groundwater supply for the irrigation system. Pinnacle alleges Dewsnup breached the parties' Real Estate Purchase Agreement ("PSA") and the implied covenant of good faith

and fair dealing by making untrue representations about the quality of the groundwater and by not disclosing high levels of sodium in some of the property's groundwater wells. The sodium allegedly precludes normal agricultural activities on the property.

Dewsnup moves to dismiss Pinnacle's claims for several reasons. First, Dewsnup contends any warranties concerning the groundwater were incorporated in the PSA, which merged into the deed at closing. Second, to the extent the PSA allows any warranties and representations to survive after closing, claims on such warranties and representations are time barred because the one-year period provided by the clause expired nearly three months before Pinnacle filed its Complaint. Dewsnup also raises factual issues concerning Pinnacle's reliance on certain representations, the effect of sodium on agricultural activities, and the effect of Pinnacle's pre-closing approval of the property. Further, Dewsnup argues that claims against Wynn Dewsnup, as an individual, must be dismissed because he was not a party to the PSA between Pinnacle and the Wynn Dewsnup Revocable Trust.

Pinnacle responds by highlighting Idaho's five-year statute of limitations for actions on written contracts. Specifically, Pinnacle argues Idaho Code § 29-110 voids any agreement to shorten the five-year statute of limitations for contract actions. As such, Pinnacle contends the PSA's survival clause does not create a contractual limitation on when Pinnacle could file suit. In addition, Pinnacle maintains the merger doctrine does not apply to the warranties concerning groundwater quality because the PSA expressly provides that those warranties would survive closing for one year. Pinnacle also contends Dewsnup's factual arguments are not appropriate for resolution under Rule 12(b)(6).

**REPORT AND RECOMMENDATION - 2**

District Judge Edward J. Lodge referred this motion, and all other pretrial matters in this case, to the undersigned. (Dkt 15.) On November 18, 2013, the Court heard oral argument on Defendants' Motion to Dismiss. During the hearing, Pinnacle conceded that Mr. Dewsnup, as an individual, is not a proper defendant. However, the parties disputed the substance of the motion. For the reasons stated below, the Court will recommend that Dewsnup's Motion to Dismiss be granted in part and denied in part.

## BACKGROUND

The property at the heart of this case lies thirteen miles south of Malta in Cassia County, Idaho. In October 2011, Pinnacle, an Arkansas limited liability company, and Dewsnup, an individual and trustee domiciled in Utah, executed a PSA, whereby Dewsnup agreed to sell the 5,487 acre property to Pinnacle for a purchase price of $15,300,000. Some 4,100 acres—almost three quarters—of this gross acreage are irrigated. Prior to the PSA, Pinnacle alleges that Dewsnup, through Robert Jones Realty, provided written representations that "[t]he farm has quality ground water at reasonable pumping levels." (Compl. at ¶ 16, Dkt. 1.) The PSA also states that the property "has access to water resources necessary in the operation of agricultural activities." (PSA ¶ 14.10, Dkt. 1-1.) Before closing, but after Pinnacle had the opportunity to inspect the property under the PSA's due diligence provisions, Pinnacle gave Dewsnup an approval notice, which the PSA required as a condition precedent to closing. (*See id.* ¶ 5.6.) Then, on January 9, 2012, the PSA was closed, and Dewsnup conveyed the property to Pinnacle by general warranty deed. According to the PSA, however, Section 14 of the

agreement— the section containing Dewsnup's representations and warranties—survived closing for one year. (*Id.* ¶ 14.12.)

After closing, Pinnacle discovered that several of the wells supplying water to the property's irrigation system contain high sodium levels. Pinnacle alleges this condition results in a "sodium absorption ratio that does not support normal agricultural activities." (Compl. ¶ 17.) In November 2012, Pinnacle's property manager, Halderman Real Asset Management, notified Dewsnup of the sodium problem, claimed that Dewsnup had defaulted on the PSA, and demanded Dewsnup either cure the default or pay part of the reclamation costs. Dewsnup did not cure the alleged default within the ten days contemplated by the PSA. On March 5, 2013, Pinnacle filed this action seeking damages for breach of the PSA and the implied covenant of good faith and fair dealing.

## DISCUSSION

**1.   Legal Standard for 12(b)(6) Motions**

The Court must accept the Complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the light most favorable to Pinnacle. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007). The issue in a 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (internal quotation omitted). Nevertheless, it is possible for a plaintiff to "plead herself out of court." *Weisbuch v. County. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation omitted). "If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively

obtained evidence on summary judgment establishes the identical facts." *Id*. But

dismissal is inappropriate if the Complaint contains "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Where the facts are ambiguous,

Pinnacle must be given the benefit of the doubt.

## 2.    **Evidence Before the Court**

Generally, the Court must limit its inquiry to the face of the complaint and any

documents attached to it. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Under

the "incorporation by reference" doctrine, the Court may, however, "take into account

documents whose contents are alleged in the complaint and whose authenticity no party

questions, but which are not physically attached to the plaintiff's pleading." *Id.* (internal

quotations omitted). The United States Court of Appeals for the Ninth Circuit has

extended this doctrine to "situations in which the plaintiff's claim depends on the contents

of a document, the defendant attaches the document to its motion to dismiss, and the

parties do not dispute the authenticity of the document, even though the plaintiff does not

explicitly allege the contents of that document in the complaint." *Id.*

Both parties rely on the language of the PSA and, to a lesser extent, the warranty

deed. Indeed, both parties agree the Court should consider the PSA and the deed in

resolving this motion. But the parties dispute whether the Court should consider the

November 2012 demand letter from Pinnacle's property manager to Dewsnup. All of

these documents are attached to Dewsnup's Motion to Dismiss, but only the PSA is

attached to the Complaint.

**REPORT AND RECOMMENDATION - 5**

a.   *The PSA*

The PSA contains five key provisions for the purposes of the instant motion. First, the PSA provides that it is to be construed in accordance with the "laws of the State in which the Property is located," namely Idaho. (PSA ¶ 23.) Three provisions relate to Dewsnup's representations and warranties.[1] With respect to the viability of Pinnacle's claims, the most critical provision is the survival clause, which provides:

> 14.12 The provisions of this Section 14 shall survive the Closing or termination of this Agreement for a period of one (1) year and shall not be merged into the deed to be delivered by [Dewsnup] pursuant hereto.

(PSA ¶ 14.12.) Two other Section 14 provisions provide relevant warranties concerning the property. Specifically, the PSA states:

> 14.   <u>Representations and Warranties of [Dewsnup]</u>. To induce [Pinnacle] to enter into this Agreement and to consummate the transaction, described in this agreement, [Dewsnup] hereby represents and warrants that:
> …
> 14.6 The information, questionnaires and other items concerning the Property provided by [Dewsnup] to [Pinnacle] do not contain any untrue statement of a material fact or omit to state any material fact necessary to make the statements made herein and therein not misleading.
> …
> 14.10 The Real Estate has access to water resources necessary in the operation of agricultural activities….

(PSA ¶¶ 14.6, 14.10.)

---

[1] Although Dewsnup contends Pinnacle waived any claims with respect to water quality because it gave the due diligence approval notice required by PSA Paragraph 5.6, that provision is not the source of Pinnacle's claims. Moreover, the effect, if any, of the due diligence approval on Pinnacle's claims under Section 14 of the PSA involves questions of fact inappropriate for resolution in the context of this Rule 12(b)(6) motion.

**REPORT AND RECOMMENDATION - 6**

Pinnacle alleges Dewsnup breached Paragraph 14.6 because sales materials provided by Dewsnup's broker, before execution of the PSA, represented "[t]he farm has quality groundwater at reasonable pumping levels" and Dewsnup failed to state material facts necessary to make the representation not misleading. (Compl. ¶ 26.) Pinnacle also alleges Dewsnup breached Paragraph 14.10 because Dewsnup failed to provide quality groundwater. (*Id*. ¶ 28.)

Fifth and finally, Paragraph 25.2 of the PSA governs in the event of a default by Dewsnup. This provision required Pinnacle to give Dewsnup written notice of the default and ten days for Dewsnup to cure. Only if Dewsnup failed to cure the default within ten days could Pinnacle "seek such other remedies as may be available at law or in equity." (PSA ¶ 25.2.)

Because the PSA is essential to the resolution of Dewsnup's motion to dismiss, referenced in the Complaint, attached to the Complaint, and attached to Dewsnup's motion, the Court will consider it.

### b.   *The Warranty Deed*

The parties likewise agree that the Court can and should consider the Warranty Deed dated January 6, 2012, which conveys the property from Dewsnup to Pinnacle. (*See* Warranty Deed at 3, Dkt. 3-4.) The deed contains a standard warranty clause but does not contain a specific warranty regarding water quality.[2] It also incorporates, as Exhibit A, a

---

[2] The warranty clause states: "The Grantor shall and will warrant and by these presents will forever defend the said premises in the quiet and peaceable possession of the Grantee, and to the successors and assigns of Grantee against all and every person and persons whomsoever lawfully claiming the same, except as aforesaid." (Dkt. 3-4 at 2.) The "except as aforesaid"

metes and bounds description of the various parcels comprising the property. And the deed includes, as Exhibit B, an extensive list of special exceptions for encumbrances such as utility easements, taxes, special assessments, and split mineral estates on some of the parcels. None of these special exceptions relate to water quality, however. The deed is relevant to the parties' merger arguments and is a matter public record, of which the Court may properly take Judicial Notice. *See Mirmehdi v. United States*, 689 F.3d. 975, 983 n.5 (9th Cir. 2012).

  c.   *Pinnacle's November 2012 Demand Letter*

The parties dispute whether the Court should consider Pinnacle's November 2012 demand letter and its exhibits, all of which are attached to Dewsnup's motion. (*See* Letter, Dkt. 3-5.) The letter includes four exhibits: water quality reports from the high-sodium wells; an excerpt from the United States Department of Agriculture Handbook No. 60 discussing the impact of high sodium water; a reclamation plan for the property; and materials Dewsnup's real estate broker provided Pinnacle (including the "high quality groundwater" representation). Dewsnup argues the Court can properly consider the letter because it is incorporated by reference in the Complaint. (*See* Dkt. 1 ¶¶ 16, 19-20, 24.) Pinnacle responds that consideration of the letter and its attachments is unnecessary and would transform this motion to dismiss into one for summary judgment.

However, Pinnacle fails to acknowledge that the incorporation by reference doctrine may cover documents attached to a motion to dismiss. For the doctrine to apply,

_____

provision appears to relate to the long list of special exceptions attached to the deed as "Exhibit B."

**REPORT AND RECOMMENDATION - 8**

(1) the plaintiff's claim must depend on the contents of a document, (2) the document must be attached to the motion to dismiss, and (3) the parties must not dispute the authenticity of the document. *Knievel* 393 F.3d at 1076.

Here, Pinnacle's claim depends, in part, on the contents of the letter. The Complaint directly quotes both the demand letter and the exhibit with the water quality representation by Dewsnup's broker. (Compl. ¶¶ 16, 19.) Indeed, the broker's representation is one of the bases for Pinnacle's lawsuit. Moreover, the demand letter demonstrates Pinnacle gave Dewsnup written notice of default, a prerequisite for seeking legal remedies under the PSA. (*See* PSA ¶ 25.2.) As to the second prong of the incorporation test, the letter is attached to Dewsnup's motion.

While Pinnacle acknowledges that a demand letter was sent to Dewsnup, Pinnacle neither disputes nor confirms the authenticity of the letter and exhibits. Both were prepared by Pinnacle's property manager, not Pinnacle itself. Because the Court is not resolving the factual issues Dewsnup raises in its motion to dismiss, the Court will consider the demand letter only as evidence that Pinnacle provided Dewsnup notice of an alleged groundwater problem in November 2012.

### d. *Facts the Court Assumes to Be True*

According to the standard of review for 12(b)(6) motions, the Court considers the following well-pleaded allegations to be true.[3]

---

[3] Of course, it will be Pinnacle's burden to establish the facts that make out its prima facie case moving forward.

- Dewsnup represented that "[t]he farm has quality groundwater at reasonable pumping levels" and "access to water resources necessary in the operation of agricultural activities." (Compl. ¶¶ 15, 16.)

- Pinnacle relied on these representations in executing the PSA. (*Id.* at 18.)

- After purchasing the property, Pinnacle discovered some of the irrigation wells contained levels of sodium so high that the irrigation water does not support "normal agricultural activities." (*Id.*¶ 17.)

- Pinnacle notified Dewsnup of the sodium issue within one year of the January 9, 2012 closing date. (*Id.* ¶ 20.)

- Pinnacle's notice gave Dewsnup ten days to cure the alleged default under the PSA. (*Id.*)

- Dewsnup failed to cure the alleged default within ten days. (*Id.* ¶ 21)

- Pinnacle has performed its obligations and has not defaulted under the PSA. (*Id.*)

**3.      Effect of the Survival Clause Under Idaho Law**

Dewsnup claims this lawsuit should be dismissed because that the PSA merged into the deed or, alternatively, that the one year period specified by the PSA's survival clause expired before Pinnacle filed its Complaint. According to Dewsnup, if the merger doctrine applies to the entire PSA, then none of the warranties in the PSA nor any covenants implied into the PSA could be breached after closing. To this, Pinnacle responds that representations and warranties concerning groundwater survive closing for one year under the PSA. In turn, Dewsnup argues the Complaint was filed more than one year after closing and is contractually time barred according to the survival clause's express terms. But Pinnacle notes that Idaho law sets a strict five-year limitations period for actions on written contracts, which either renders the one-year limit void as against

**REPORT AND RECOMMENDATION - 10**

public policy or means the survival clause extends the time in which an actionable breach may occur.

### a. *The Merger Doctrine*

Generally, "[w]hen a deed is delivered and accepted as performance of the contract to convey, the contract is merged in the deed. Although the terms of the deed may vary from those contained in the contract, the deed alone must be looked to to determine the rights of the parties." *Jolley v. Idaho Securities, Inc.*, 414 P.2d 879, 884 (Idaho 1966). Dewsnup first argues that, because the deed contains no representations or warranties related to water quality, Pinnacle's claim must fail since it does not allege Dewsnup violated a covenant in the deed.

There is, however, an important exception to the merger doctrine. Specifically, the general rule does not apply to collateral covenants in the contract:

> [T]he contract of conveyance is not merged upon execution of a deed where under the contract the rights are conferred collaterally and independent of the deed; there being no presumption that the party in accepting the deed intends to give up the covenants of which the deed is not a performance or satisfaction.

*Id.* Following this rule, the *Jolley* court held that the seller's failure to provide an abstract showing marketable title was actionable because the contract provision requiring the abstract was collateral to the deed. In other words, the abstract provision "[did] not relate to the title, possession, quantity, or emblements of the land." *Id.* at 885 (internal quotation omitted).

Here, the survival clause renders Section 14 of the PSA collateral to the deed for a limited period of time. The survival clause states "[t]he provisions of this Section 14 shall

**REPORT AND RECOMMENDATION - 11**

survive the Closing or termination of this Agreement for a period of one (1) year and shall not be merged in the deed to be delivered by [Dewsnup] pursuant hereto." (PSA ¶ 14.12.) The parties clearly intended Section 14 of the PSA to continue in force, independent of the deed, for one year after closing. In fact, Dewsnup concedes that the survival clause provides a limited exception to the general merger rule. (Dkt. 3-1 at 7.) Yet Dewsnup also contends that this limited exception constitutes a contractual statute of limitations that renders Pinnacle's Complaint untimely. In the alternative, Dewsnup argues that, if the a one-year contractual limitations period is void as against Idaho's public policy, then Section 14 merged into the deed. These arguments require analysis of Idaho's statute of limitations for claims on written contracts.

### b.      *Idaho's Statute of Limitations*

Pinnacle maintains the survival clause's one-year limitation period conflicts with Idaho's five-year limitation period for written contracts. Therefore, Pinnacle asserts, the clause is either void or must be construed as a limitation on when an actionable breach could occur. "[I]t is well established that, *in the absence of a controlling statute to the contrary*, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608 (1947) (emphasis added).

Idaho Code § 5-216 establishes a five-year limitations period for an action on a written contract. This five-year period may not be shortened by contract.

**REPORT AND RECOMMENDATION - 12**

> *Every stipulation or condition in a contract*, by which any party
> thereto is restricted from enforcing his rights under the contract in
> Idaho tribunals, or *which limits the time within which he may thus
> enforce his rights, is void as it is against the public policy of Idaho*.

Idaho Code § 29-110(1) (emphasis added). Thus, "Idaho has expressed a fundamental

policy by requiring strict adherence to its statutory limitations period." *Indus. Indem. Ins.

Co. v. U.S.*, 757 F.2d 982, 988 (9th Cir. 1985).

Despite Idaho's fundamental policy, Dewsnup argues the PSA's survival clause

establishes a contractual statute of limitation that binds the parties. Dewsnup puzzlingly

bases this argument on the Ninth Circuit's decision in *Western Filter Corp. v. Argan,

Inc.*, which held that a survival clause in a stock purchase agreement *did not* shorten

California's statute of limitation for contract claims. 540 F.3d 947 (9th Cir. 2008). In that

case, similar to this one, Western Filter sued Argan over a breach of representations and

warranties that, by virtue of a survival clause, extended one year beyond closing.[4] *Id.* at

949. Almost one year after closing, Western Filter sent Argan a demand letter alleging a

breach, but Western Filter did not file suit until more than one year after closing. *Id.* at

950. The Central District of California granted summary judgment in favor of Argan,

finding that Western Filter's misrepresentation and other claims were time-barred by the

one-year contractual limitations period established by the survival clause.[5] *Id.* Western

---

[4] The survival clause in *Western Filter* stated: "the covenants, agreements, representations and warranties of the parties hereto contained in this Agreement or in any certificate or other writing delivered pursuant hereto or in connection herewith shall survive the Closing until the first anniversary of the closing date." Id. at 951.

[5] Crediting an argument similar to one of Dewsnup's, the district court also found that Western Filter's demand letter—sent before the one-year period expired—did not toll the contractual limitations period established by the survival clause. As discussed below, such an

Filter appealed, arguing—in much the same way as Pinnacle argues here—that the survival clause only established when a breach may occur and thus did not limit the time for filing suit. *Id.* at 951.

On appeal, the Ninth Circuit specifically noted that it was construing only California law, not establishing a general precept of contract law. Indeed, the panel found it is a "well-settled proposition of law in California that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that *such stipulation violates no principle of public policy*, provided the period fixed be not so unreasonable as to show imposition of undue advantage." *Id.* at 952 (emphasis added) (quotation and alteration omitted). Despite this liberality, the court noted that California law—like that of New York and some other states which permit the practice—does not favor shorter contractual limitations periods "'because they are in derogation of the statutory limitation.'" *Id.* at 953 (quoting *Hurlbut v. Christiano*, 63 A.D.2d 1116, 1117 (N.Y.App.Div. 1978)). Consequently, any modifications to the statutory default must be clear and unambiguous and should be strictly construed against the party invoking the shorter limitations period. *Id*. These rules led the *Western Filter* court to conclude the survival clause was ambiguous with respect to when a claim must be filed. Construing the clause against Argan, the Ninth Circuit reversed the district court's summary judgment.

---

argument only works if the contract is governed by the law of a state that allows parties to contractually shorten the default statute of limitations. Idaho is not one of those states.

**REPORT AND RECOMMENDATION - 14**

Relying on *Western Filter*, Dewsnup contends the "Ninth Circuit has held that time limits to a survival clause create a contractual statute of limitations." (Dkt. 3-1 at 8.) Dewsnup also points to decisions from Delaware, Illinois, and Ohio allowing parties to contractually vary the default statute of limitations. But Dewsnup overemphasizes the general rule in these cases and fails to recognize the *Western Filter* court went on to strictly construe the shorter contractual limitations period against the party asserting it. While the court noted that both Argan and Western Filter presented reasonable interpretations of the survival clause, Argan's could not prevail because it was in derogation of the four-year limitations period established by California law. *Western Filter*, 540 F.3d at 954.

Moreover, Dewsnup does not—indeed cannot—rely on Idaho law to support its interpretation. Idaho law governs the PSA, (PSA ¶ 23), and Idaho law establishes a strong public policy against shortening the five-year statute of limitations. Idaho Code §§ 5-516, 29-110. By contrast, the public policy of California, Delaware, Illinois, New York, and Ohio allows parties to contractually shorten a statute of limitations in certain circumstances. *See, e.g., Moreno v. Sanchez*, 106 Cal.App.4th 1415, 1430 (Cal. Ct. App. 2003) (no violation of California policy if limitation reasonable); *Shaw v. Aetna Life Ins. Co.*, 395 A.2d 384, 386 (Del. Super. Ct. 1978) (shorter limitations period "valid if reasonable"); *Latek v. Lease America Corp.*, No. 90 C 7230, 1992 WL 170546, at *3 (N.D. Ill. July 16, 1992) (enforcing 18-month contractual limitation period); *Escue v. Sequent, Inc.* 869 F.Supp.2d 839, 847 (S.D. Ohio 2012) (shorter limitations period allowed by Ohio law but contract must unambiguously modify the statutory period).

**REPORT AND RECOMMENDATION - 15**

Importantly, the courts in some of these cases declined to enforce shorter contractual limitations periods.

The PSA's survival clause, like the one in *Western Filter*, is reasonably susceptible to at least two different meanings. It could require Pinnacle to sue within one year of the closing or it could provide an extra year for an actionable breach of Section 14 of the PSA. The survival clause in *Western Filter* is not materially different from the one here—both have the same operative language ("shall survive the Closing"), both specify a one-year survival period, and both carry forward certain representations and warranties into the survival period. But neither states that a "claim" or "suit" must be filed within the survival period. In fact, neither addresses the next step after discovery of a breach during the survival period. This silence motivated the Ninth Circuit to reverse summary judgment in favor of Agran, as "the one-year limitation [could reasonably be read] only to specify when a breach of the representations and warranties may occur." *Western Filter*, 540 F.3d at 954.

The similarity between this case and *Western Filter* is compelling. Yet Idaho law provides an even stronger reason for construing the clause as an extension of the time for an actionable breach. It is a well-settled principle of contract law that "courts will presume parties to a contract intended a lawful construction thereof." *Coeur d'Alene Lakeshore Owners and Taxpayers v. Kootenai County*, 661 P.2d 756, 761 (Idaho 1983). Interpreting the survival clause as a one-year limitation on Pinnacle's lawsuit is tantamount to finding the parties intended it to be void under Idaho law. Consistent with Idaho Code § 29-110, however, the lawful construction is that the survival clause extends

**REPORT AND RECOMMENDATION - 16**

the time for an actionable breach. Because the survival clause is reasonably susceptible to this lawful construction, the Court need not address the contract reformation issues that would arise if the clause was void. Thus, Pinnacle filed suit well within Idaho's limitations period and premised its claims on a breach allegedly discovered—and for which Dewsnup had notice—before Dewsnup's representations and warranties merged into the deed.[6]

### 3.   Dewsnup's Factual Arguments

In addition to its merger and contractual statute of limitations arguments, Dewsnup raises several questions of fact concerning the transaction. Specifically, Dewsnup argues: (a) Pinnacle could not reasonably rely on the broker's written representation that the property has "quality groundwater" because of the PSA's integration clause; (b) Dewsnup did not breach Paragraph 14.10 of the PSA because the property "has access to water resources necessary in the operation of agricultural activities"; and (c) Pinnacle's pre-closing approval of the property under the PSA's due diligence provisions waived any post-closing claims concerning groundwater quality. Each of these arguments depends on facts not in the record before the Court and, therefore, cannot be decided in the context of Dewsnup's Rule 12(b)(6) motion to dismiss.

---

[6] Because Pinnacle's claim for breach of the PSA withstands Dewsnup's motion to dismiss, Pinnacle's claim for breach of the implied covenant of good faith and fair dealing also survives. *See Idaho Power Co. v. Cogeneration, Inc.*, 9 P.3d 1204, 1216 (Idaho 2000) ("[V]iolation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract.")

**REPORT AND RECOMMENDATION - 17**

4.        **Whether Wynn Dewsnup, as an Individual, Should Be a Defendant**

Pinnacle's Complaint names Wynn Dewsnup as defendant both individually and in his fiduciary capacity as trustee of the Wynn Dewsnup Revocable Trust. (Compl. at 1.) During the hearing on this motion, Pinnacle conceded that Wynn Dewsnup, the individual, is not a proper defendant, as he is not a party to the PSA and is not alleged to otherwise be liable under the PSA. Thus, Wynn Dewsnup should be dismissed as a defendant in his individual capacity.

## CONCLUSION

Pinnacle states plausible claims for breach of the PSA and the implied covenant of good faith and fair dealing. The parties expressly agreed that the PSA's warranties and representations would not merge into the deed until one year after closing. Yet the survival clause is ambiguous with respect to when a lawsuit must be filed. Idaho law prohibits contractual modifications to the five-year statute of limitations for actions on written contracts. Accordingly, the PSA's survival clause would be void if it meant Pinnacle had to file its Complaint within one year of closing. But, when construed consistent with Idaho law, the survival clause provides an additional year in which a breach of the PSA's representations and warranties could occur.

Pinnacle claims that, contrary to Dewsnup's warranties and representations, the property's groundwater quality is so poor that it does not support normal agricultural activities—allegations the Court must assume are true at this point. Not only did Pinnacle give Dewsnup notice of this alleged breach within one year of closing, it also filed this action well within Idaho's five-year limitations period for written contract suits. Because

**REPORT AND RECOMMENDATION - 18**

Pinnacle's claim for breach of the PSA is timely, its claim for breach of the implied covenant of good faith and fair dealing also survives. Dewsnup's remaining arguments for dismissal cannot be resolved at this point because they depend on facts and evidence not before the Court in the context of the motion to dismiss.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (Dkt. 3) be **GRANTED IN PART AND DENIED IN PART.** The Court recommends dismissing Wynn Dewsnup, the individual, as a defendant and finding that Pinnacle's Complaint does not otherwise fail to state a claim upon which relief can be granted.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **December 06, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 19**