UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PINNACLE GREAT PLAINS OPERATING COMPANY, LLC, an Arkansas limited liability company,<br><br>               Plaintiff,<br><br>v.<br><br>WYNN DEWSNUP REVOCABLE TRUST; WYNN DEWSNUP, in his individual capacity and as trustee of the Wynn Dewsnup Revocable Trust; 1 STOP REALTY, INC.; and DOES INDIVIDUAL/ENTITIES I–XX,<br><br>               Defendants. | Case No. 4:13-cv-00106-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |
| 1 STOP REALTY, INC., a Minnesota corporation,<br><br>             Third-party Plaintiff,<br><br>v.<br><br>ROBERT JONES REALTY, INC., an Idaho corporation,<br><br>             Third-party Defendant. | |

**REPORT AND RECOMMENDATION - 1**

Before the Court is a motion filed by Third-party Defendant Robert Jones Realty, Inc. (RJR), seeking dismissal of Third-party Plaintiff 1 Stop Realty, Inc.'s Third-party Complaint under Rule 12(b)(6). (Dkt. 46.) Pursuant to 28 U.S.C. § 636(b)(1)(B), District Judge Edward J. Lodge has referred all pretrial motions in this case to the undersigned. (Dkt. 15.) The motion to dismiss is fully briefed, and the parties presented oral arguments to the undersigned on June 24, 2015. After carefully considering the parties' arguments and the record, the Court will recommend dismissal of 1 Stop's Third-party Complaint without leave to amend.

## BACKGROUND

This case arises out of Defendants Wynn Dewsnup and the Wynn Dewsnup Revocable Trust's sale to Plaintiff Pinnacle Great Plains Operating Company of 5,487 acres of land, known as Bridge Farm, near the town of Malta, Idaho. Approximately 4,100 acres of the property are irrigated, and the parties' dispute centers on the quality of the groundwater supply for the irrigation system. Pinnacle alleges the Dewsnup Defendants fraudulently induced Pinnacle to purchase the property, breached the parties' Purchase Agreement, and breached the implied covenants of good faith and fair dealing by knowingly making untrue representations about the quality of the groundwater and by not disclosing high levels of sodium in some of the property's groundwater wells. The sodium problem allegedly prevents normal agricultural activities on the property.

In addition, Pinnacle alleges 1 Stop brokered the transaction on Pinnacle's behalf, knew about the sodium problem before Pinnacle purchased Bridge Farm, had a duty to disclose that information to Pinnacle, but failed to do so. (2d Am. Compl. ¶¶ 31–38, Dkt.

**REPORT AND RECOMMENDATION - 2**

35.) Accordingly, Pinnacle brought claims against 1 Stop for violating the Idaho Real Estate Brokerage Representation Act (the Brokerage Act), Idaho Code § 54-2082 et seq.; negligence per se; and fraudulently inducing Pinnacle to buy Bridge Farm. (*Id.* ¶¶ 65–91.) Concurrent with its Answer to Pinnacle's claims, 1 Stop filed a Third-party Complaint against RJR. (Dkt. 37.) The Third-party Complaint alleges RJR brokered the sale on behalf of the Dewsnup Defendants and is liable to 1 Stop for violation of the Brokerage Act and negligence per se "[i]f a jury finds that Third-Party Plaintiff 1 Stop is liable for Pinnacle's alleged damages. . . ." (*Id.* ¶ 18.) In response, RJR filed the instant motion to dismiss 1 Stop's Third-party Complaint under Rule 12(b)(6).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 14 governs impleader, the situation where a defending party seeks to bring a third party into the case. In certain circumstances, the rule allows a defendant to override the plaintiff's choice of how to structure the litigation. 3 James Wm. Moore et al., Moore's Federal Practice § 14.03 (3d ed. 2015). Rule 14(a)(1) permits a defendant, acting as a third-party plaintiff, to serve a summons and complaint on a nonparty "who is or may be liable to [the third-party plaintiff] for all or part of the claim against it." "It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim." *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983). Further, Rule 14(a) does not permit impleader on the theory that the third-party defendant is directly liable to the original plaintiff. *Haynes v. Anna's Linens*, No. C-05-2670-MMC 2005 WL 3021941, *2 (N.D. Cal. Nov. 10, 2005) (citing *Parr v. Great Lakes Express Co.*, 484 F2d 767, 769

REPORT AND RECOMMENDATION - 3

(7th Cir. 1973)). Thus, "while Rule 14 provides the procedural mechanism for the assertion of a claim for contribution or indemnity, there must also exist a substantive basis for the third-party defendant's liability" to the third-party plaintiff. *Kim v. Fujikawa*, 871 F.2d 1427, 1434 (9th Cir. 1989) (affirming dismissal of third-party complaint because governing substantive law did not recognize a right of contribution).

Idaho law applies to this diversity action. When analyzing the Third-party Complaint under Idaho law, the Court utilizes the familiar standards for a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). The Court must accept the Third-party Complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the light most favorable to 1 Stop. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007). The issue raised by a 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (internal quotation omitted). Nevertheless, it is possible for a plaintiff to "plead herself out of court." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation omitted). "If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." *Id*. But dismissal is inappropriate if the Third-party Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

**REPORT AND RECOMMENDATION - 4**

"Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Leave to amend need not be granted if amendment would be futile. *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963 (9th Cir. 2010). Accordingly, leave may be denied if "the court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Dist. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## DISCUSSION

RJR argues the Third-party Complaint must be dismissed, because 1 Stop has failed to state a claim for relief against RJR. According to RJR, 1 Stop's attempted Brokerage Act and negligence per se claims fail for the same reason: RJR did not owe 1 Stop a duty under the Brokerage Act. Without responding to RJR's duty argument, 1 Stop contends it should be granted leave to amend the Third-party Complaint with a new claim for equitable indemnity. This new theory is the only amendment 1 Stop proposes. But RJR argues 1 Stop's proposed indemnity claim also fails as a matter of law, effectively rendering amendment futile. The Court addresses these arguments below.

**1.     1 Stop's Brokerage Act and negligence per se claims fail as a matter of law**

"[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence per se." *Sanchez v. Galey*, 733 P.2d 1234, 1242 (Idaho 1986). To be liable for a violation of the Brokerage Act, for example, the

**REPORT AND RECOMMENDATION - 5**

defendant must breach a statutory duty owed to the plaintiff under the Act. *Blackmore v. Re/Max Tri-Cities*, LLC, 237 P.3d 655 (Idaho 2010). Likewise, a negligence per se claim must satisfy the following elements:

> (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury.

*O'Guin v. Bingham County,* 122 P.3d 308, 311 (Idaho 2005)*.*

Thus, the critical question with regard to both the Brokerage Act and negligence per se claims is whether 1 Stop has plausibly alleged that RJR breached a statutory duty to 1 Stop. Considering the allegations in the Third-party Complaint, the answer is crystal clear. Nowhere does 1 Stop allege that RJR owed or breached a duty to 1 Stop; rather, 1 Stop alleges RJR breached duties owed to Pinnacle.[1] For instance, 1 Stop claims RJR "had a statutory duty to disclose to *Pinnacle* adverse material facts of which [RJR] actually knew or should have known." (3d-pty. Compl. ¶ 22 (emphasis added); *see also* ¶¶ 23, 25–26, 29, 31, Dkt. 37.) Absent allegations that RJR owed *1 Stop* a statutory duty, RJR cannot be liable to 1 Stop for violating the Brokerage Act or for negligence per se.

Additionally, the facts alleged by 1 Stop establish that 1 Stop was not part of the class of persons the Brokerage Act was designed to protect. *See O'Guin*, 122 P.3d at 311. That is because the Brokerage Act imposes duties on real estate brokers vis-à-vis only "clients" and "customers." Idaho Code §§ 54-2086 (duties to a customer), 54-2087

---

[1] Whatever the merit of these allegations, Pinnacle—after twice amending its complaint—has not brought any claims against RJR.

**REPORT AND RECOMMENDATION - 6**

(duties to a client). The Act defines "client" as "a buyer or seller, or a prospective buyer or seller, or both who have entered into an express written contract or agreement with a brokerage for agency representation in a regulated real estate transaction." *Id*. § 54-2083(5). A "customer" is "a buyer or seller, or prospective buyer or seller, who is not represented in an agency relationship in a regulated real estate transaction." *Id*. § 54-2083(7). According to the Brokerage Act's plain terms, one must be a buyer, seller, prospective buyer, or prospective seller to qualify as either a "client" or a "customer" and thus fall within the class of persons the Act was designed to protect.

According to the Third-party Complaint, however, Pinnacle was the buyer and the Dewsnup Defendants were the sellers in the Bridge Farm transaction. (Dkt. 37 ¶ 5.) The Third-party Complaint does not allege, nor does 1 Stop argue, that 1 Stop was a prospective buyer or a prospective seller. In fact, 1 Stop claims it had no substantive role in the transaction—it "merely introduced Pinnacle to the Property in July of 2011 . . . ." (1 Stop Resp. Br. at 7, Dkt. 51.) Assuming, as the Court must, that 1 Stop's factual allegations are true, the Third-party Complaint provides no plausible basis for concluding 1 Stop was a buyer, seller, prospective buyer, or prospective seller in connection with the Bridge Farm transaction. Consequently, 1 Stop could not possibly be RJR's "client" or "customer," and RJR therefore owed no duty to 1 Stop under the Brokerage Act.

2. **1 Stop's proposed equitable indemnification claim fails as a matter of law**

Notwithstanding its failure to state a claim under the Brokerage Act or for negligence per se, 1 Stop argues its claim against RJR should be "viewed as a claim for

**REPORT AND RECOMMENDATION - 7**

equitable indemnity." [2] (*Id*. at 2.) 1 Stop contends it is entitled to equitable indemnity "to protect 1 Stop form being held liable for passive neglect (if proven) when another party actively created the problem." (*Id*. at 9.) According to 1 Stop, RJR was the true wrongdoer in the Bridge Farm transaction, because RJR knew about the water quality problems at Bridge Farm but prepared a brochure for prospective buyers that falsely stated the property had quality groundwater. (Dkt. 37 ¶¶ 9–10.) 1 Stop's liability to Pinnacle, on the other hand, would result from "merely fail[ing] to disclose or pass the information on to Pinnacle concerning the water issues." (Dkt. 51 at 9.)  Based on these assertions, 1 Stop urges the Court to grant leave to amend the Third-party Complaint with an indemnity claim.

In Idaho, the common law right of indemnity is preserved by statute and is unaffected by Idaho's comparative negligence regime. *Adams v. Krueger*, 856 P.2d 887, 892 n.8 (Idaho 1991) (citing Idaho Code § 6-804(2)). "The common law right of indemnity . . . refers to those situations where a person who without fault on his part is compelled to pay damages occasioned by the negligence of another." *May Trucking Co. v. Int'l Harvester Co.*, 543 P.2d 1159, 1161 (Idaho 1975). An equitable indemnity claim has three elements: "(1) an indemnity relationship, (2) actual liability of an indemnitee to the third party, and (3) a reasonable settlement amount." *Chenery v. Agri-Lines Corp.*,

---

[2]   The Court understands 1 Stop's proposed indemnity claim as an invocation of common law or equitable indemnity, which is essentially an implied equitable cause of action. *See May Trucking Co. v. Int'l Harvester Co.*, 543 P.2d 1159, 1161 (Idaho 1975). 1 Stop does not argue any other form of indemnity recognized in Idaho—such as express contractual indemnity— would apply. *See Pocatello Indus. Park Co. v. Steel West, Inc.*, 621 P.2d 399, 405–06 (Idaho 1980) (considering both contractual and common law indemnity claims).

**REPORT AND RECOMMENDATION - 8**

766 P.2d 751, 754 (Idaho 1988). "'[U]nless liability of the claimed indemnitee to the third party is established, the right to indemnification does not arise.'" *Beitzel v. Orton*, 827 P.2d 1160, 1168 (Idaho 1992) (quoting *Williams v. Johnson*, 442 P.2d 178, 184 (Idaho 1968)).

At this point in this litigation, the second and third elements are not satisfied, as 1 Stop has not been found liable to a third party. Even assuming those elements could be satisfied at some point in the future, the question remains whether an indemnity relationship exists between 1 Stop and RJR. The Idaho Supreme Court has recognized equitable indemnity relationships in at least three contexts:

> (1) when the indemnitee's liability was based on passive neglect and the indemnitor was guilty of recklessness; (2) when the indemnitee owed only a secondary duty to the injured party and the indemnitor was primarily responsible; or (3) when the indemnitee was only vicariously liable.

*Mitchell v. Valerio*, 858 P.2d 822, 824 (Idaho Ct. App. 1993) (citing *May Trucking*, 543 P.2d at 1161). But, "'where the fault of each party is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on that party's own wrong.'" *Beitzel*, 827 P.2d at 1168 (quoting *Borchard v. Wefco, Inc.*, 733 P.3d 776, 779 (Idaho 1987)) (internal alterations omitted).

The *Beitzel* case aptly illustrates the principles behind the doctrine of equitable indemnity. There, Robert Beitzel sustained injuries from driving his motorcycle into an unmarked and unbarricaded, three-inch-deep trench on a public street in Coeur d'Alene, Idaho. *Id*. at 1162. Beitzel sued four defendants: (1) the City of Coeur d'Alene, which

**REPORT AND RECOMMENDATION - 9**

issued the permit for the trench; (2) General Telephone Company of the Northwest, the permittee and owner of the trench project; (3) Orton Utilities Construction, the contractor responsible for digging the trench; and (4) Coeur d'Alene Asphalt, the contractor responsible for replacing the asphalt. *Id*. Orton and Coeur d'Alene Asphalt both admitted they were responsible for leaving the accident site in a safe condition and warning of any hazards in the event the site could not be left in a safe condition. *Id.* at 1169. The City and General Telephone, on the other hand, were both responsible for discovering and remedying any defect in the street or any inadequacy in the warning caused by Orton or Coeur d'Alene Asphalt. *Id*.

At oral argument in this case, 1 Stop's counsel attempted to distinguish *Beitzel*, claiming it, unlike this case, involved a contract for indemnity. While it is true the contract between General Telephone and Orton contained an indemnity clause, the clause was irrelevant to the court's equitable indemnity analysis. Indeed, the court analyzed the indemnity clause and equitable indemnity issues separately, applying contract interpretation principles to the former and common law indemnity principles to the latter. *Id*. at 1167–69.

On the equitable indemnity issue, the Idaho Supreme Court held the City and General Telephone were entitled to indemnification from Coeur d'Alene Asphalt. *Id*. at 1169. The indemnity relationship existed because the negligence of the City and General Telephone—premised on a failure to discover or remedy the existing hazard and inadequate warning—"was not similar in character" to the negligence of Coeur d'Alene Asphalt—premised on a failure to make safe or warn of the hazard. *Id*. By contrast, the

**REPORT AND RECOMMENDATION - 10**

City was not entitled to indemnification from General Telephone, as both entities' negligence "was similar in character"—both were liable for breaching the same duty. *Id*.

Here, 1 Stop's proposed indemnification claim against RJR is akin to the City's claim against General Telephone. 1 Stop's claims against RJR allege fault that is equal in grade and similar (if not identical) in character to the fault alleged in Pinnacle's claims against 1 Stop.[3] For instance, Pinnacle alleges: "Despite Defendant 1 Stop's knowledge of the significant water quality issues on the Property, it failed to disclose and actively concealed the significant water quality issues from Pinnacle." (2d Am. Compl. ¶ 37, Dkt. 35.) 1 Stop likewise alleges: "Despite Robert Jones Realty, Inc.'s knowledge of the salt content of both the soil and the water on the Property, it failed to disclose the salt-related water quality issues to Pinnacle." (3d-pty. Compl. ¶ 16, Dkt. 37.) Both complaints allege this water quality information was adverse and material and that the responsible party—1 Stop or RJR, respectively—had a duty to disclose such information to Pinnacle. (Dkt. 35 ¶¶ 38, 68–70, 75, 82–84; Dkt. 37 ¶¶ 22–23, 29, 32.) Pinnacle alleges no other basis for 1 Stop's liability, and 1 Stop alleges no other basis for RJR's liability.

In *Beitzel*, the City was not General Telephone's indemnitee, because each faced liability for similar conduct in breach of the same duty.  Here too, 1 Stop's and RJR's

---

[3]  Although the Court's review on a motion to dismiss generally is confined to the four corners of the challenged pleading, it is well established that the Court may take judicial notice of "undisputed matters of public record, including documents on file in federal or state court." *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted). Therefore, pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of Pinnacle's Second Amended Complaint for the purposes of establishing the existence and nature of Pinnacle's allegations against 1 Stop. The Court does not assume the allegations in the Second Amended Complaint are true; rather, it merely notes they have been asserted.

**REPORT AND RECOMMENDATION - 11**

liability (if proved) would arise from their respective failures to disclose known, adverse, and material facts. This is not a situation where 1 Stop would be "without fault" but nonetheless "compelled to pay damages occasioned by the negligence of" RJR. *May Trucking*, 543 P.2d at 1161. Instead, 1 Stop is attempting to shift liability for an alleged fault that is plainly "equal in grade and similar in character" to that of RJR. *Beitzel*, 827 P.2d at 1168. Therefore, no indemnity relationship exists.[4]

## CONCLUSION

The Third-party Complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Because RJR did not owe 1 Stop a duty under the Brokerage Act, 1 Stop's Brokerage Act and negligence per se claims against RJR fail as a matter of law. Furthermore, 1 Stop cannot cure these deficiencies by alleging a new claim for equitable indemnity. Given Pinnacle's allegations against 1 Stop and 1 Stop's allegations against RJR, it is clear that the doctrine of equitable indemnity does not apply. 1 Stop has not suggested—and the Court cannot conceive—any other amendment that could salvage the Third-party Complaint. Dismissal without leave to amend is therefore appropriate.

---

[4] This conclusion does not preclude full discovery related to RJR's role in the Bridge Farm transaction or defenses plead by the Defendants, including any defenses under Idaho's comparative fault regime.

**REPORT AND RECOMMENDATION - 12**

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED** that Third-party Defendant Robert Jones Realty, Inc.'s Motion to Dismiss (Dkt. 46) be **GRANTED** and Defendant/Third-party Plaintiff 1 Stop Realty, Inc.'s Third-party Complaint (Dkt. 37) be dismissed without leave to amend.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **June 30, 2015**

Honorable Candy W. Dale
United States Magistrate Judge