UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PINNACLE GREAT PLAINS OPERATING COMPANY, LLC, an Arkansas Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>WYNN DEWSNUP REVOCABLE TRUST; WYNN DEWSNUP, in his individual capacity and as trustee of the Wynn Dewsnup Revocable Trust; 1 STOP REALTY, INC., and DOES INDIVIDUAL/ENTITIES I through XX,<br><br>Defendants. | Case No. 4:13-cv-00106-EJL-CWD<br><br>**ORDER ON REPORT AND RECOMMENDATION** |
| WYNN DEWSNUP REVOCABLE TRUST; and WYNN DEWSNUP, in his individual capacity and as trustee of the Wynn Dewsnup Revocable Trust,<br><br>Cross-Claimants,<br><br>vs.<br><br>1 STOP REALTY, INC.,<br><br>Cross-Defendant. | |

The United States Magistrate Judge Candy W. Dale issued a Report and

Recommendation (Report) in this matter.   Dkt.75. Pursuant to 28 U.S.C. § 636(b)(1), the

parties had fourteen days in which to file written objections to the Report. Plaintiff

Pinnacle Great Plains Operating Compnay, LLC filed its objection to the Report on August

10, 2016. Dkt. 76. Defendant and Cross Claimant Wynn Dewsnup, individually and as

**ORDER ON REPORT AND RECOMMENDATION- 1**

trustee of the Wynn Dewsnup Revocable Trust (collectively referred to as "Dewsnup") joined Pinnacle's objection. Dkt. 77. Defendant 1 Stop Realty, Inc. filed a response to the objections of Pinnacle and Dewsnup. Dkt. 78 and 79.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* Where, however, no objections are filed the district court need not conduct a *de novo* review. In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted the requirements of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. §636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939 (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See Ciapponi*, 77 F.3d at 1251 ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); *see also Peretz*, 501 U.S. at 937-39 (clarifying that de novo review not required for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005). Furthermore, to the extent that no objections are made, arguments to the contrary are waived. *See* Fed. R. Civ.

ORDER ON REPORT AND RECOMMENDATION- 2

P. 72; 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the Report and Recommendation). "When no timely objection is filed, the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.1974)).

In this case, objections were filed to portions of the Report, so the Court is required to conduct a *de novo* determination of the objected portions of the Report. The Court finds the objections of Dewsnup are moot as Dewsnup settled the claims by Pinnacle and 1 Stop Realty. Dkts. 83-86.

## FACTUAL BACKGROUND

The Court adopts the factual and procedural background set forth by Judge Dale (with slight modifications) to begin its analysis of the objections to the Report

This litigation arises from Dewsnup's October 2011 sale to Pinnacle of a 5,487–acre parcel of agricultural land near Malta, Idaho, known as "Bridge Farm." Specifically, Pinnacle claims Dewsnup and Pinnacle's purported broker, 1 Stop Realty, misrepresented the quality of the groundwater supply for Bridge Farm's irrigation system.

Critical to resolution of the pending motions to amend is determining when 1 Stop Realty's officers, Swenson and Heller, became aware of the alleged problems with the quality of Bridge Farm's groundwater supply and when, through the process of discovery, Pinnacle became aware of Swenson's and Heller's knowledge of Bridge Farm's water

quality issues. To better understand the parties' arguments, the Court will explain briefly the basic structure of 1 Stop Realty, how 1 Stop Realty learned about the Bridge Farm property, and 1 Stop Realty's relationship history with Pinnacle leading up to the Bridge Farm sale.

## I. 1 Stop Realty

1 Stop Realty is a Minnesota corporation that sells and purchases agricultural property. (Dkt. 62-2 at 8.) 1 Stop Realty's officers include President Kirk Swenson, and Vice President Roger Heller.[1]  In addition to its officers, 1 Stop Realty employs an office manager, an assistant, and a website technician. It has also three sales associates who work as independent contractors. 1 Stop Realty operates out of two locations. The main office is located in Kasson, Minnesota, and the other office is located in Olivia, Minnesota. Swenson works from the Kasson office; Heller works out of the Olivia office.

## II. 1 Stop Realty's Introduction to Bridge Farm

In early 2010, 1 Stop Realty's client, Teays River Investments, LLC,[2]  expressed interest in expanding into the northwest United States and sought 1 Stop Realty's services

---

[1] It is unclear whether 1 Stop Realty has two vice presidents. During his deposition, Swenson testified that Wendy Forthum was a vice president. However, during the hearing on the pending motions, 1 Stop Realty's counsel represented that Swenson and Heller were 1 Stop Realty's only officers.

[2] "Teays River Investments, LLC, is a privately-held holding company based in Zionsville, Indiana that invests in and manages assets in the agricultural sector." http://teaysinvestments.com/ (Last visited July 26, 2016) (attached as Appendix A to the Report).

**ORDER ON REPORT AND RECOMMENDATION- 4**

in its search for farmland in which to invest. (Dkt. 62-2 at 20.) Heller discovered Bridge Farm and began preparing paperwork on the property to present to Teays.

In May of 2010, Heller and Swenson travelled to Idaho to tour Bridge Farm. Afterward, Swenson sent an email to Teays informing them that he had visited Bridge Farm, and recommending moving forward by submitting a letter of intent to the Dewsnups. (Dkt. 64-2 at 16.) In the email, Swenson stated, among other things: Bridge Farm "has really good water with inexpensive pumping cost….Nice deal, good water." *Id.* Despite making this statement in his email, Swenson clarified during his recent deposition that, at the time he sent the email, 1 Stop Realty had not yet investigated Bridge Farm's water quality. (Dkt. 62-2 at 23.)

Throughout 2010, 1 Stop Realty continued to collect more information on Bridge Farm for Teays. In late May of 2010, Garrett Dewsnup[3] emailed Pat Kelgen, Heller's assistant, five pages of Bridge Farm water analysis lab results from the year 2003. (Dkt. 64-2 at 2-7.) Kelgen forwarded the results to Heller who then forwarded them to Swenson. The lab results indicate "possible" and "significant" problems with Bridge Farm's water. *Id.* Swenson explained during his recent deposition that he and Heller discussed the 2003 lab results in 2010, and concluded that, given the out-dated nature of the reports, Bridge Farm's water quality would need to be re-tested during the due-diligence period prior to Teays' purchase of the farm. (Dkt. 62-2 at 56.)

---

3 Garrett Dewsnup's relationship to Wynn Dewsnup is not apparent in the record. In the Amended Complaint, Pinnacle alleges Garrett Dewsnup was an agent of Wynn Dewsnup. (Dkt. 35 at 4.)

**ORDER ON REPORT AND RECOMMENDATION- 5**

Around this same time period, Heller had been in communication with Dewsnup's agronomist, Kyle Carpenter, who had worked on Bridge Farm for several years, to discuss Bridge Farm's soil and water quality. On June 28, 2010, Heller emailed Swenson to inform him about his discussion with Carpenter. Heller reported:

Most of the soils are Genola which is Class IIe irrigated and a good one.

Some of the others take more careful management as per the consultant.4

(Dkt. 64-2 at 26.)

Sometime around July of 2010, Swenson gained the impression from Teays that they did not want to move forward with the Bridge Farm purchase for "scalability" reasons (i.e., Teays was interested in a farm bigger than Bridge Farm). (Dkt. 64-2 at 27.) During the hearing, 1 Stop Realty argued that once Teays lost interest in Bridge Farm, 1 Stop Realty set aside and forgot about the paperwork it gathered on Bridge Farm.

### III. 1 Stop Realty Introduces Bridge Farm to Pinnacle

On December 29, 2010, Howard Halderman, the President and CEO of Halderman Farm Management Services, emailed several real estate brokers, including 1 Stop Realty's President Swenson, about an investment opportunity for one of its institutional

---

4 Swenson explained during his deposition that he gained the impression from the agronomist that Bridge Farm did not require the installation of a new well to improve its water quality. (Dkt. 62-2 at 56.)

**ORDER ON REPORT AND RECOMMENDATION- 6**

clients—Pinnacle.5  Specifically, Pinnacle was seeking farmland. The email addressed to Swenson did *not* solicit him or 1 Stop Realty to act as Pinnacle's broker in the potential acquisition of the farmland investment.

On January 17, 2011, Swenson emailed Halderman to inform him about the Bridge Farm property. In the email, Swenson specified the price of the property and that Teays originally passed on its purchase. On June 16, 2011, Garrett Dewsnup sent 1 Stop Realty a lease proposal from one of the Dewsnup's Bridge Farm tenants. The proposal noted: "the farm has both soil and water borne salt challenges." (Dkt. 62-2 at 104.) When 1 Stop Realty later forwarded this information to Pinnacle, two pages, including the page which referenced Bridge Farm's "salt challenges," were omitted.

There is no dispute that 1 Stop Realty did not disclose the 2003 water analysis lab results to Pinnacle prior to Pinnacle's purchase of Bridge Farm. Swenson explained during his deposition that Pinnacle did not ask him or anyone from 1 Stop Realty to verify and reconcile the water rights on Bridge Farm in 2011. (Dkt. 62-2 at 66.) He indicated also that no advance funds were provided to 1 Stop Realty by Pinnacle to pay for any due diligence items. *Id.* On October 14, 2011, Pinnacle purchased Bridge Farm from Dewsnup.

It is undisputed that Pinnacle paid a commission to 1 Stop Realty for its services related to Bridge Farm. Pinnacle claims in this litigation that 1 Stop Realty acted as its broker on the purchase. 1 Stop Realty claims it was not Pinnacle's broker on the purchase

---

5  Halderman was introduced to Swenson though his brother Richard Halderman. (Dkt. 64-3 at 4.) Howard Halderman had known Swenson for about thirteen or fourteen years. Halderman Farm Management Services and 1 Stop Realty had worked together in the past to acquire property for Teays.

but that it was more of a "facilitator." It is unclear from the record before the Court exactly what Halderman Farm Management Service's role was in the purchase or if another brokerage was also involved in representing Pinnacle.6

**IV. Pinnacle's Discovery of 1 Stop Realty's Knowledge of Adverse Findings on the Water Quality**

On March 5, 2013, Pinnacle filed its original complaint against Dewsnup for breach of its obligations under the Bridge Farm purchase agreement. (Dkt. 1.) On April 15, 2013, Dewsnup filed a motion to dismiss Pinnacle's Complaint. (Dkts. 3-4.) The parties informally agreed not to pursue discovery until after the Court's resolution of the motion to dismiss. On February 6, 2014, the Court entered an Order granting Dewsnup's motion to dismiss in part.7 (Dkt. 19). Shortly thereafter, the parties stipulated to, and the Court approved, amendment of the Case Management Order, which lifted the informal discovery stay. (Dkt. 23.)

On or about October 3, 2014, Pinnacle received Dewsnup's responses to Pinnacle's first set of discovery requests. (Dkt. 29-1 at 16.) Ten days later, Pinnacle moved for leave to amend its complaint to assert fraud claims against Dewsnup. (Dkt. 29.)

---

6 In Swenson's January 2016 deposition he testifies that Pat Karst from Halderman Farm Real Estate was involved as the broker. Dkt. 62-2, pp. 12-13.   Additionally, there was a local person, Tom (last name unknown) who was conducting local due diligence on the Bridge Farm property. *Id.*
7 The Court dismissed Wynn Dewsnup, the individual, as a defendant, but found that Pinnacle's complaint did not otherwise fail to state a claim upon which relief could be granted against the Wynn Dewsnup Revocable Trust.

**ORDER ON REPORT AND RECOMMENDATION- 8**

On November 18, 2014, Pinnacle deposed Garrett Dewsnup. During his deposition, Mr. Dewsnup revealed that he provided prospective buyers, including Swenson, soil and water samples (the 2003 water analysis lab results) for Bridge Farm. (Dkt. 64-1 at 2.) Also in November of 2014, in response to a third party subpoena, 1 Stop Realty (prior to its inclusion as a party defendant) produced over 3,000 pages of materials related to the Bridge Farm transaction. *Id.*

On December 12, 2014, Pinnacle filed a motion for leave to join 1 Stop Realty as a party defendant and to assert new claims against 1 Stop Realty. (Dkt. 32.) Pinnacle did not seek leave to join Swenson and Heller as individual party defendants at that time; however, both Swenson and Heller were identified in the proposed amended complaint as representatives of 1 Stop Realty who had knowledge of the Bridge Farm transaction. (Dkt. 32.)

On February 23, 2015, the Court granted Pinnacle's two motions to amend its complaint and to join 1 Stop Realty as a party defendant. (Dkt. 34.) Nearly one month later, 1 Stop Realty filed a third-party complaint against Dewsnup's Bridge Farm brokerage, Robert Jones Realty, Inc. (Dkt. 37.) On April 4, 2015, Dewsnup filed its answer to the amended complaint and also filed a cross-claim against 1 Stop Realty. (Dkt. 40.)

On May 7, 2015, Robert Jones Realty filed a motion to dismiss the third-party complaint. (Dkt. 46.) One week later, discovery reached a halt once more when the Court ordered a stay of all proceedings, with the exception of filings related to the motion to

**ORDER ON REPORT AND RECOMMENDATION- 9**

dismiss and written discovery propounded on 1 Stop Realty by Pinnacle, until the Court could address Robert Jones Realty's motion. (Dkt. 48.)

On June 11, 2015, in response to Pinnacle's written discovery, 1 Stop Realty produced documents to Pinnacle and Dewsnup related to its work and investigation of Bridge Farm that 1 Stop Realty had collected when it was representing Teays. (Dkt. 64-1 at 2.) These disclosures included the 2003 Bridge Farm water analysis lab results, Swenson's personal notes from a 2010 telephone conference with Wynn Dewsnup which acknowledge, among other points, "salts + sodium in soils," and emails between Heller and Swenson which revealed that Heller had spoken to an agronomist regarding Bridge Farm's long term sustainability and the salinity of its soils. (Dkt. 64-2 at 1-27.) During the hearing on the pending motions, counsel for Pinnacle admitted she did not immediately review these documents because of the stay that was in place at the time.

On October 29, 2015, during a telephonic status conference with Judge Dale, counsel for the parties indicated no new deadline for joinder of parties or amendment of pleading was necessary. A new trial date was set for January 25, 2017. (Trial has since been continued to April 2017.)

On January 7 and 8, 2016, Pinnacle deposed 1 Stop Realty officers Swenson and Heller. Pinnacle claims new information disclosed at the depositions provided for the first time a basis to amend the complaint to allege Swenson was personally liable for fraud and RICO violations. Pinnacle' theory appears to be Swenson was personally liable for not

**ORDER ON REPORT AND RECOMMENDATION- 10**

disclosing adverse information in his possession and it was the depositions that revealed Heller had not concealed his information from Swenson.

On March 14, 2016, Pinnacle filed its motion to amend the pleadings to join Swenson as a defendant and to assert new claims against him. Dewsnup's motion to join Pinnacle's motion also sought to add Swenson and Heller as cross-defendants and amend its cross-claim to assert new claims against Swenson and Heller. Judge Dale held a hearing on the motions to amend and issued her Report recommending the motions be denied. Judge Dale concluded that Pinnacle had adequate information in its possession via the discovery disclosures of June 2015 to allow it to seek to amend so the present motion was not timely filed.

## PINNACLE'S OBJECTION

Pinnacle objects to Judge Dale's conclusion that information gleaned in the January 2016 depositions was *not* the first point in time relevant information to support the new fraud and RICO violation was discovered. Pinnacle argues Judge Dale's ruling was clearly erroneous. This Court respectfully disagrees with Pinnacle.

In reviewing the entire record in this matter, it is clear to this Court that sufficient facts existed for Pinnacle to seek to add Swenson.   First, Garrett Dewsnup's deposition testimony in October 2014 provided notice to Pinnacle that Garrett Dewsnup had provided the 2003 water analysis lab results to Swenson. Second, Pinnacle's receipt of discovery on June of 2015 disclosed further information of 1 Stop Realty's and Swenson's knowledge of adverse information on the Bridge Farm. Pinnacle's failure to consider Garrett Dewsnup's

**ORDER ON REPORT AND RECOMMENDATION- 11**

testimony and failure examine the June 2015 discovery in its possession due to a stay related to the motion to dismiss Robert Jones Realty, Inc. (Dewsnup's broker on the transaction) is not good cause for failing to discover facts that Swenson knew adverse information about the water quality on Bridge Farm.

Third, while counsel claims it did not timely move to amend immediately after the depositions of Swenson and Heller because the parties were pursuing settlement negotiations, this is also not good cause for not filing the motion to amend earlier than March of 2016. Pinnacle had moved to amend the complaint only ten (10) days after it discovered facts to support a fraud claim against Dewsnup. Pinnacle did not immediately move to amend to add Swenson after the deposition was completed. Instead, Pinnacle waited over two months to file the motion to amend to name Swenson.

Fourth, while Pinnacle seeks to add Swenson to be able to seek damages from him personally, there is no indication or allegation to support that Swenson was not acting as an officer of 1 Stop Realty for all the alleged actions and/or omissions related to the Bridge Farm transaction. Clearly, without the amendment, Pinnacle already has the ability to seek relief against 1 Stop Realty for Swenson's conduct.

While Judge Dale may have used the phrase "for all intents and purposes, 1 Stop is Swenson" this was for purposes of evaluating possible prejudice versus a legal finding that Swenson was the alter ego of 1 Stop Realty.[8] Nor has Pinnacle argued or established that

---

[8] While the Court notes the deposition establishes Swenson is an officer of 1 Stop Realty, the Court does not know whether Swenson is the only shareholder of the corporation.

**ORDER ON REPORT AND RECOMMENDATION- 12**

piercing the corporate veil would be appropriate to make Swenson personally liable for actions he took on behalf of 1 Stop Realty. The purpose of the alter ego doctrine is to bypass the corporate entity for the sole purpose of avoiding injustice. *See Seymour v. Hull & Moreland Eng'g,* 605 F. 2d 1105, 1111 (9th Cir. 1979).   Mere "shareholder disrespect for a corporations' separate identity alone is insufficient reasons to pierce the corporate veil." *Audit Serv. v. Rolfson*, 641 F.2d 757, 764 (9th Cir. 1981). Here, Pinnacle has not set forth facts to show the separate personalities of the corporation and the individual no longer exist or that it cannot achieve justice if it is successful in prosecuting its claims against 1 Stop Realty.

Fifth, the request for amendment is not timely filed. This case began in 2013 and adding a new party would delay the proceedings beyond the current trial date in April of 2017. Additionally, counsel represented to Judge Dale there was no need to have a new deadline to add parties ordered by the Court at a hearing on October 29, 2015 which was after Garrett Dewsnup's deposition and after Pinnacle's receipt of the June 2015 discovery materials. Pinnacle is therefore bound by its counsel's representation that it would not be seeking to further amend the complaint. The Court also agrees with Judge Dale that Pinnacle could have named Swenson without any additional facts when it amended the complaint to add 1 Stop Realty.

Sixth, Pinnacle's argument that Swenson and 1 Stop Realty will not be prejudiced is not persuasive. While there may not be any prejudice to 1 Stop Realty, there is definitely prejudice to Swenson being added as a party. It is unclear whether 1 Stop Realty's attorney

**ORDER ON REPORT AND RECOMMENDATION- 13**

would have a conflict of interest in representing Swenson as well or if in the discovery conducted to date would have been handled differently if Swenson was a party versus only a witness.

Seventh, if Pinnacle truly believes that the alleged fraud and RICO violations were not "discovered" until January of 2016, nothing prevents Pinnacle from filing a separate lawsuit again Swenson for such conduct. As to the Brokerage Act violations and negligence per se claims, those actions are more properly brought against the entity receiving a commission. Plaintiff has the burden of proving its commission agreement was between Pinnacle and Swenson in order to hold Swenson personally liable. Based on the record provided, while Swenson may have received monies from the commission payment, there it appears the commission paid by Pinnacle was paid to 1 Stop Realty, not directly to Swenson.

For all these reasons, the Court finds the objection of Pinnacle to Judge Dale's recommendation to deny the motion to admit as being "clearly erroneous" is without legal merit. In its review of the Report and the record in this matter, this Court finds no clear error on the face of the record. Moreover, the Court finds the Report is well-founded in the law based on the facts of this particular case and this Court is in agreement with the same. Pinnacle's objections to the Report are denied.

**ORDER ON REPORT AND RECOMMENDATION- 14**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that the Report and

Recommendation (Dkt. 75) shall be **INCORPORATED** by reference and **ADOPTED** in

its entirety.

**IT IS THEREFORE ORDERED**:

1.  Pinnacle's Motion to Amend Pleadings to Join a Party and Modify Case

    Management Order (Dkt. 62) is **DENIED.**

2.  Dewsnup's Motion to Join Pinnacle's Motion and Motion for Leave to Join

    Parties and File an Amended Cross-Claim Motion (Dkt. 63) is **DENIED AS**

    **MOOT** based on the settlements entered by Dewsnup.

DATED: February 9, 2017

Edward J. Lodge
United States District Judge

**ORDER ON REPORT AND RECOMMENDATION- 15**